UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FLORENCE URGENT CARE,     :         NO. 1:04-CV-00177
          et al.,        :
                          :
          Plaintiffs,    :
                          :
     v.                   :         **OPINION AND ORDER**
                          :
HEALTHSPAN, INC., et al., :
                          :
          Defendants.    :

This matter is before the Court on the parties' cross motions for summary judgment: Defendants' Motion for Summary Judgment (doc. 38), Plaintiffs' Response (doc. 45), and Defendants' Reply (doc. 46); Plaintiffs' Motion for Summary Judgment (doc. 39), Defendants' Response (doc. 40), and Plaintiffs' Reply (doc. 41). For the reasons indicated herein, the Court GRANTS IN PART Defendants' Motion for Summary Judgment as to Plaintiffs' claim pursuant to Kentucky's "Any Willing Provider" statute, and as to Plaintiffs Drs. Zineddin and Kutmah's claims for breach of implied duty of good faith and fair dealing, but DENIES the balance of Defendants' motion (doc. 38). Plaintiffs' Section 1981 claims, as well as Plaintiff Florence Urgent Care's claim for breach of implied duty of good faith and fair dealing, survive Defendants' motion. The Court DENIES Plaintiffs' Motion for Summary Judgment in its entirety (doc.

39).

## I.  BACKGROUND

On March 2, 2004, Plaintiffs filed their Complaint, alleging that Defendants Healthspan, Inc., ("Healthspan"), and Robert Strub, M.D. ("Dr. Strub") illegally discriminated against Plaintiffs by terminating Plaintiffs as preferred providers in the preferred provider organization ("PPO") operated by Defendants, and by refusing to allow Plaintiffs to apply for preferred provider status, on the grounds of their Arabic race (doc. 1).  Plaintiffs' Complaint includes three causes of action: 1) a claim pursuant to 42 U.S.C. § 1981 for racial discrimination, 2) a claim based in a violation of the implied covenant of good faith and fair dealing, and 3) a claim pursuant to Kentucky's "Any Willing Provider" statute, Ky. Rev. Stat. Ann. § 304.17A-270 (doc. 1).

Healthspan is an Ohio Corporation that does business in Ohio and Kentucky as a preferred provider network (doc. 38).  In its role as a preferred provider network it contracts with physicians, hospitals, urgent care centers, and other service providers who agree to perform their services at discounted rate (Id.).  Taken together, these entities form Healthspan's "network," which Healthspan sells to self-insured employers who then realize discounted rates for health care services (Id.).

2

Dr. Strub is Healthspan's Medical Director (doc. 1). Plaintiff Florence Urgent Care, Inc., ("Urgent Care") is a Kentucky corporation, while Plaintiffs Mohamed Zineddin, M.D. ("Dr. Zineddin") and Kheder Kutmah, M.D. ("Dr. Kutmah") are shareholders of Urgent Care (Id.). All three Plaintiffs were Healthspan providers until July 9, 2002 (Id.).

Healthspan plays a limited role in the delivery of medical care (doc. 38). It primarily serves a contracting role in piecing together the network (Id.). Many of Healthspan's customers engage the services of a third-party administrator ("TPA"), that receives the bill from the service provider, reviews it for appropriateness of the services and charges, and then pays the appropriate amount from an account established by the employer (doc. 38). Healthspan does not process claims itself (Id.). Some thirty TPA's process claims for Healthspan's customers (Id.).

Plaintiff Dr. Zineddin, who is Syrian-born, started an urgent care practice with other physicians in 1999, a practice that ultimately became Florence Urgent Care (Id.). On November 4, 1999, the urgent care practice became a member of the Healthspan network under an Ancillary Services Agreement ("ASA") that covered two Arab-owned facilities (Id.). In the beginning, two Arab doctors, Dr. Ghassan Haj-Hamed and Dr. Abdulkader Al-

3

Abdulrazzak, each owned fifty-percent of Florence Urgent Care (Id.). Plaintiff Dr. Kutmah became an employee of Urgent Care in June 2000, and in April 2001 purchased a thirty-five percent ownership interest in the entity (Id.). Dr. Kutmah continues to own his share, while Dr. Zinnedin also now owns a thirty-five percent share, and Dr. Al-Abdulrazakk continues to own a thirty percent share (Id.).

According to Defendants, in late fall 2001, one of the TPA's, Principal Financial Group ("Principal"), contacted Healthspan to complain that physicians at Urgent Care had been inappropriately coding patient encounters such that more money would be paid to the physicians (Id.). Healthspan indicates it requested documentation from the TPA, and then Defendant Dr. Strub asked two other TPA's about their experiences with Urgent Care (Id.). Dr. Strub indicates that these two TPA's also found inappropriate billing practices on the part of Urgent Care (Id.).

Defendants state that Plaintiffs do not deny that Healthspan received complaints from TPA's and admit that Humana had placed them on a Corrective Action Plan with threats of removal from its network (Id.). However, Plaintiffs argue that the complaint from Principal Financial Group involved a patient who is not a member of Healthspan, and so they question why Healthspan ever discussed this individual with the TPA (doc. 45).

4

Moreover, Plaintiffs question Defendants' claim that other TPA's complained about billing issues, arguing that Defendants provided no written discovery response on the issue, that Dr. Strub's recollection of the two phone calls is hazy, that Dr. Strub only identified the persons with whom he spoke by their first names, and that one of those persons is no longer employed by the TPA (Id.). Plaintiffs state that though they had a billing dispute with Humana and United HealthCare, these companies handled the situation in a race-neutral manner, did not terminate them, and Plaintiffs are still providers for Humana and United HealthCare (doc. 45). In short, Plaintiffs question the veracity of Defendants' proffered reason that Plaintiffs allegedly inappropriately coded and billed (Id.).

Healthspan indicates that in response to the coding concerns raised by Principal Financial Group, Healthspan terminated the ASA agreement by letter on April 9, 2002 (Id.). The notice of termination listed no reason for the termination, and Urgent Care did not appeal the removal, despite a contractual right to do so (Id.).

After Healthspan terminated its ASA with Urgent Care, Dr. Kutmah, Dr. Zineddin, and a few other physicians affiliated with the Plaintiffs began to seek admission to the Healthspan network as individual physicians (Id.). Healthspan denied the

5

individual doctors into the network and admits giving Plaintiffs a false reason for denying them access to the network (<u>Id</u>.). Instead of confronting Plaintiffs about the alleged coding problems, Healthspan indicated to Plaintiffs that there was no geographic need for them in its network (<u>Id</u>.).   Dr. Strub indicates that this "conflict-avoidance approach" to removing physicians is common in the industry (<u>Id</u>.).

Defendants argue they are entitled to summary judgment on all claims because Plaintiffs cannot establish that Defendants discriminated against them or violated an implied covenant of good faith and fair dealing (<u>Id</u>.).   Defendants further argue that Plaintiffs cannot establish a violation of Kentucky's "Any Willing Provider" statute, which Defendants argue does not apply to Healthspan as an Ohio-based PPO (<u>Id</u>.).   Plaintiffs argue that there is a genuine issue of material fact as to discrimination, which can only be determined by a jury (doc. 39).   However, Plaintiffs argue it is not Defendants, but rather Plaintiffs who are entitled to summary judgment on their remaining claims because according to Plaintiffs, Healthspan repeatedly lied to Plaintiffs about the real reason for Plaintiffs' termination, and because Plaintiffs were a willing provider under Kentucky law (<u>Id</u>.).

## II.  SUMMARY JUDGMENT STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and

7

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir.

8

1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita

9

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III.  ANALYSIS**

**A.  Plaintiffs' Section 1981 Claim**

**1.  Florence Urgent Care Has Standing**

Before addressing the merits of Plaintiffs' claims, Defendants argue that Urgent Care, as a corporation, cannot have standing to bring a discrimination claim because in Defendants' view, "a corporation has no race" (doc. 38).  In support of its position, Defendants cite Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 263 (1977), in which Justice White found that a development corporation

10

challenging a village's zoning policy had "no racial identity and cannot be the direct target" of the alleged discrimination against racial minorities. Id. The high court did not reach the question of whether the development corporation could assert the rights of third persons, because in that case there was an individual plaintiff who demonstrated standing to assert a challenge on his own. Id. at 263-64.

Village of Arlington Heights neither explicitly stands for Defendants' proposition, nor is it on point here. The development corporation in Village of Arlington Heights was a nonprofit real estate developer that under the facts appeared to have no particular racial identity. It advocated on behalf of racial minorities. Justice White's language does not suggest that a corporation whose shareholders or board are perceived to possess a racial identity could not be the victim of racial discrimination. Here, Urgent Care is owned entirely by doctors of Arab descent. In an instance where a corporation is owned and controlled by members of one racial group, it only comports with justice and common sense to conclude that such corporation could be the target of racial animus. City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989)(the high court implicitly recognized that corporations can have racial characteristics by allowing white-owned corporation to bring a reverse discrimination

challenge); _Thinket Ink Information Resources, Inc. v. Sun MicroSystems, Inc._, 368 F.3d 1053 (9th Cir. 2004) (corporation has standing to assert Section 1981 claims where corporations shareholders are all African American); _Des Vergnes v. Seekonk Water District_, 601 F.2d 9, 13-14 (1st Cir. 1979)(corporation has "implied right of action against any person who, with a racially discriminatory intent, interferes with its right to make contracts with non-whites"); _Hudson Valley Freedom Theater, Inc. v. Heimback_, 671 F.2d 702 (1982)(corporation has standing to assert claims of racial discrimination).  The Court therefore does not find well taken Defendants' argument that Urgent Care has no standing based on the theory that it can have no race.

### 2. Plaintiffs' Discrimination Claim

42 U.S.C. § 1981 prohibits intentional discrimination on the basis of race in the making of contracts.  The burden-shifting scheme of _McDonnell Douglas Corp. v. Green_, 411 U.S. 792 (1973) applies to a Section 1981 claim such that Plaintiffs first must establish a _prima facie_ case that 1) they are a member of a protected class, 2) that they sought to make or enforce a contract in a manner generally engaged in by the medical institution, and 3) the institution treated Plaintiffs different from similarly-situated individuals outside the protected class. _Jeung v. McKrow_, 264 F.Supp.2d at 567-68 (E.D. Mich. 2003).

12

Defendants concede for the purposes of their motion that Plaintiffs have established their _prima_ _facie_ case. At the next step of the analysis, Defendants must proffer a legitimate non-discriminatory reason for its refusal to contract with Plaintiffs. In this instance, Defendants argue their reason is that Plaintiffs were improperly coding and billing for the services they were providing. The burden therefore shifts back to Plaintiffs to show that Defendants' proffered reason is merely a pretext for discrimination. Plaintiffs may prove pretext by showing that Defendants' reason 1) has no basis in fact, 2) did not actually motivate Defendants' conduct, or 3) was insufficient to warrant the challenged conduct. _Jeung_, 264 F.Supp.2d at 569.

Defendants here argue that Plaintiffs cannot demonstrate pretext because in their view it is undisputed that Healthspan received complaints from Principal about the Plaintiffs, and Plaintiffs admit they have no basis to deny that Healthspan received the complaints (doc. 38). Plaintiffs argue that Healthspan's allegations are false, and proffer the affidavit of the patient about whom Principal allegedly complained, Tammie Dooley (doc. 45). Ms. Dooley indicates she was never a member of Healthspan (_Id_.). Plaintiffs therefore argue any complaints based on Ms. Dooley cannot be based in fact, because Healthspan had no business with Ms. Dooley (_Id_.).

13

Moreover, Plaintiffs argue that the other complaints allegedly received by Defendants are so lacking in detail that they are impossible to refute (Id.). According to Plaintiffs, Defendants provided no documents in response to Plaintiffs' request on this topic, and in deposition, Plaintiffs argue that Dr. Strub's recollection of the phone calls he had with complainers is extremely hazy (Id.). Plaintiffs suggest the real reason they started having trouble with Healthspan and Dr. Strub is the terrorist attacks of September 11, 2001 (Id.).

Of critical importance to Plaintiffs' argument is that Defendants concede lying to Plaintiffs about the real reason for Plaintiffs' termination. Defendants indicated there was no geographic need for Plaintiffs in the network, as opposed to confronting Plaintiffs with any improper coding and billing issues.

Defendants respond by citing the Affidavit of Barbara Durr, the Director of Contracting and Networking Services for Healthspan, in which she provides proof of several hundred Arab doctors in the network (doc. 46). Such evidence, Defendants suggest, refutes the proposition that they discriminate against Arabs (Id.). Defendants also proffer evidence that a subset of these Arab doctors were admitted to the network shortly after the terrorist attacks, and have continued to be admitted without

14

interruption since that time (<u>Id</u>.).

The Court finds a genuine issue of material fact as to whether Defendants discriminated against Plaintiffs.  Defendants first lied to Plaintiffs about the real reason for Plaintiffs' termination, and Plaintiffs have sufficiently cast doubt onto Defendants' new reason, alleged inappropriate billing, so as to preclude summary judgment.  Although Defendants proffer evidence of other Arab doctors in their network, a jury might indeed infer discrimination on the part of Dr. Strub, should his testimony in front of a jury about complaints against Urgent Care remain as hazy as it currently appears in the record.  Plaintiffs argue persuasively that there is more than one way to enter the network, and suggest that the way open to them was blocked by the actions of Dr. Strub.  Moreover, Plaintiffs have effectively rebutted the use of Ms. Dooley's billing records because she was never a member of Healthspan.  In short, it is not undisputed that alleged complaints about Urgent Care served as the basis for Plaintiffs' termination.  Accordingly, Plaintiffs are correct that it is appropriate for a jury to make a determination whether Plaintiffs were terminated from Healthspan and refused re-entry into the network based on their race.

15

**B.   Plaintiffs' Claim for Breach of Duty of Good Faith and Fair Dealing**

Both parties move for summary judgment as to Plaintiffs' claim for breach of duty of good faith and fair dealing.  The Court finds disputed issues of fact preclude summary judgment for either Defendants or Plaintiff Urgent Care on this claim.  However, the Court finds that the explicit terms of the November 4, 1999 Ancillary Services Agreement ("ASA") state that there are no third-party beneficiaries to the Agreement[1], such that Drs. Kutmah and Zineddin's individual claims for breach of duty of good faith and fair dealing must be dismissed.

The question before the Court is whether there is no genuine issue of material fact such that either Defendants or Urgent Care are entitled to judgment as a matter of Ohio law on the implied duty of good faith and fair dealing.  Defendants argue that they are entitled to judgment as a matter of law because the ASA provides for termination by notice, and Ohio law allows parties to exercise rights under a contract without being liable for such a breach (doc. 38, <u>citing</u> <u>Montgomery County Community College Dist. v. Donnell, Inc.</u>, 141 Ohio App.3d 593,

---

[1] The contract allows an exception for payors and their agents to qualify as third-party beneficiaries, but this exception is inapplicable to Drs. Kutmah and Zineddin.

16

752 N.E.2d 342 (Ct. App. Ohio, 2001), <u>Pannozzo v. Anthem Blue Cross & Blue Shield</u>, 152 Ohio App.3d 235, 787 N.E.2d 91 (Ct. App. Ohio, 2003)). Defendants indicate that there is no issue that the duty of good faith and fair dealing is implied into the ASA, but argue rather that <u>Donnell</u> and <u>Pannozzo</u> hold that exercising a termination by notice provision cannot constitute a violation of such a duty (doc. 40).

Urgent Care argues in its motion that it is entitled to summary judgment on its claim for breach of duty of good faith and fair dealing because of the "constant and repeated lies to present and prospective Arab providers" (doc. 39). Additionally, Plaintiffs argue that Healthspan held Dr. Zineddin's application for over a year, when Ohio Rev. Code § 1753.06 requires notice of application status within 120 days (<u>Id</u>.).

The implied duty of good faith and fair dealing depends on the existence of a contract. <u>Khoury v. Trumbull Physician Hospital Org.</u>, No. 99-T-0138, 2000 Ohio App. LEXIS 5785, *13 (Ct. App. Ohio, December 8, 2000). "Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." <u>Schory & Sons, Inc. v. Francis</u>, 75 Ohio St.3d 433, 443-44, 662 N.E.2d 1074, 1082-83 (Ohio 1996)(quoting <u>Kham & Nates</u>

17

Shoes No.2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357-
1358 (7th Cir. 1990)).  In Littlejohn v. Parrish, the Hon. Mark
P. Painter wrote "[P]ublic policy dictates that every contract
contain an implied duty for the parties to act in good faith and
to deal fairly with each other.  Any agreement. . . has an
implied covenant of good faith and fair dealing that requires not
only honesty but also reasonableness in the enforcement of the
contract."  163 Ohio App.3d 456 at 462, 839 N.E.2d 49 at 54 (Ct.
App. Ohio 2005).

        As an initial matter, the Court finds that the
individual doctors, Plaintiffs Zineddin and Kutmah, are barred
from asserting such a claim.  Both doctors have admitted having
no individual contractual relationship with Healthspan.  That is
not to say that they could not qualify as third-party
beneficiaries under the ASA, but as noted above, the ASA
explicitly excludes third-party beneficiaries.

        Next, however, the Court addresses Defendants' argument
that they were merely exercising their right to terminate the
agreement pursuant to its notice provisions.  Defendants are
correct that Ohio case law provides that parties may exercise
contractual rights without violating the implied duty, but their
cited case law in no way contains a fact pattern under which the
alleged violator admittedly lied about the purported reason for

18

its action.  Defendants' cited cases do not necessarily hold that exercising a termination by notice provision can never constitute a violation of the duty of good faith and fair dealing.  In Montgomery County Community College Dist. v. Donnell, Inc., 141 Ohio App.3d 593, 752 N.E.2d 342 (Ct. App. Ohio, 2001), the Ohio appeals court reversed a trial court decision finding a violation of the duty of good faith and fair dealing.  Id.  The trial court found that a violation took place where a party was forced into litigation by the joinder of additional parties, thus triggering revocation of the arbitration provisions in the contract.  Id. The party had alleged the joinder was unnecessary and pursued only to escape arbitration.  Id.  The appeals court found that the trial court erred because the contract provided for revocation of the arbitration clause.  Id. at 598, 347.  The party in Donnell could not allege a violation of good faith and fair dealing where it had expressly agreed to the revocation provision.  Id.  Similarly, Pannozzo v. Anthem Blue Cross & Blue Shield, involved a starkly different factual background from that in the case at bar.[2]  152 Ohio App.3d 235, 787 N.E.2d 91 (Ct.

_____

[2] In Pannozzo, a doctor challenged the nonrenewal of terms in an expired contract while working under a new contract that expressly superceded all prior contracts.  The doctor admitted that Ohio law was against him and asked the Court to adopt California law which was more favorable to his due process claim. The Court dismissed all of the doctor's claims.  152 Ohio App.3d

App. Ohio, 2003). Citing <u>Sammarco v. Anthem Ins. Co.</u>, 131 Ohio
App.3d 544, 723 N.E.2d 128 (Ct. App. Ohio 1998), the <u>Pannozzo</u>
Court noted that "a mere termination without cause does not
allege a violation of any duty of good faith and fair dealing."
152 Ohio App.3d at 243, 787 N.E.2d at 97. The <u>Pannozzo</u> court
further noted that the <u>Sammarco</u> court found no public policy or
statutory provision that would prevent a termination without
cause. <u>Id</u>.

   Here, Plaintiffs have clearly proffered evidence that
they were lied to about the reason for their exclusion from the
network. Dr. Strub admitted he gave Plaintiffs a false reason
for the rejection of their applications, and this casts doubt on
the motivation behind the termination of the ASA. Under such
circumstances this case presents more than a "mere termination
without cause," but rather presents a case where a jury could
find pretext for invidious purposes running contrary to public
policy. The lack of honesty here precludes a finding in
Defendants' favor on Urgent Care's claim for good faith and fair
dealing.

   However, disputed facts also preclude summary judgment
for Plaintiff Urgent Care on this claim. Defendants argue they

---

235, 787 N.E.2d 91.

terminated the contract with Urgent Care due to improper billing practices, a fact that Plaintiffs dispute. Should a jury find that improper billing practices served as Defendants' bona fide motivation for their action, then Urgent Care's claim against Defendants would have no factual basis. In such a case, a jury might grant credence to Defendants' claimed practice of using of false statements to avoid conflict.

**C. Plaintiffs' Claim for Violation of the Kentucky "Any Willing Provider" Statute**

Both parties also move for summary judgment on Plaintiffs' claim for violation of the Kentucky "Any Willing Provider" Statute, Ky. Rev. Stat. § 304.17A-270. Such statute provides that "A health insurer shall not discriminate against any provider who is located within the geographic coverage area of the health benefit plan and who is willing to meet the terms and conditions for participation established by the health insurer." Ky. Rev. Stat. § 304.17A-270.

Defendants argue that this statute is inapplicable to Healthspan as it is not a "health insurer" (doc. 40). Under Kentucky law, contend Defendants, an "insurer" is defined as:

> Any insurance company; health maintenance organization; self-insurer or multiple employer welfare arrangement not exempt from state regulation by ERISA; provider-sponsored integrated health delivery network; self-insured employer-organized association, or nonprofit hospital, medical-surgical, dental, or health service

21

corporation authorized to transact health insurance business in Kentucky.

Ky. Rev. Stat. § 304.17A-005(24)(doc. 40). Defendants argue Healthspan does not issue or sell insurance and is not one of these listed entities, but rather "is a preferred provider network that bridges the relationship between self-insured employers and healthcare providers" (Id.). Moreover, Defendants argue, insurers must be authorized to transact health insurance business in Kentucky, which it is not. Defendants argue Healthspan is an Ohio-based and licensed entity, and proffers the affidavit of Robert Campbell, CEO of Healthspan, that indicates in 2003 he met with a representative of the Kentucky Department of Insurance (doc. 38). Mr. Campbell indicates that the Department did not require Healthspan to comply with its insurance laws, including its "Any Willing Provider" provisions (Id.). In summary, Defendants argue Plaintiffs seek recovery under a statute that by its express terms has no applicability to Healthspan (docs. 40, 46).

Plaintiffs argue they are entitled to summary judgment because Drs. Kutmah and Zineddin, and the entity Urgent Care, were providers located within the geographic coverage area, they were willing to meet the terms and conditions for participation, and repeatedly contacted Healthspan seeking to apply or to

22

reapply for membership in the network (doc. 39). Plaintiffs' Reply does not address Defendants' argument that the statute is inapplicable to Healthspan (doc. 41).

The Court finds Defendants' argument unopposed and persuasive. To whatever extent Plaintiffs' claim pertains to the initial contract, the ASA explicitly states that it should be governed by Ohio law. To the extent that such claim challenges Defendants' refusal to negotiate new contracts, Plaintiffs' fail to refute Healthspan's proffer of evidence that it does not qualify as an insurer under Kentucky law. The Court therefore finds no genuine dispute that Defendant Healthspan is not an insurer under Kentucky law. Consequently Healthspan is entitled to summary judgment on this claim pursuant to Ky. Rev. Stat. § 304.17A-270.

**IV. CONCLUSION**

The Court finds that Urgent Care and the individual physician Plaintiffs have standing to assert a Section 1981 discrimination claim. Plaintiffs have demonstrated a genuine issues of material fact as to whether they were discriminated against in Defendants' termination of their contract and in Defendants' refusal to negotiate new individual contracts.

The Court finds also finds disputed issues of fact

23

preclude summary judgment for either Defendants or Plaintiff Urgent Care on Plaintiffs' claim for breach of duty of good faith and fair dealing. However, the Court finds that explicit terms of ASA bar Dr. Kutman and Dr. Zineddin's individual claims under this theory. Finally, the Court finds Defendants' motion for summary judgment well taken as to Plaintiffs' "Any Willing Provider" Statute, because Plaintiffs have failed to rebut evidence that Healthspan does not qualify as an insurer under Kentucky law.

Accordingly, the Court GRANTS IN PART Defendants' Motion for Summary Judgment (doc. 38) to the extent that it dismisses the claims of Drs. Kutman and Zineddin for breach of duty of good faith and fair dealing, and it dismisses Plaintiffs' claims pursuant to the Kentucky "Any Willing Provider" statute, Ky. Rev. Stat. § 304.17A-005(24), but it DENIES the balance of Defendants' Motion (doc. 38). The Court further DENIES Plaintiffs' Motion for Summary Judgment in its entirety (doc. 39). This matter shall proceed to trial on the question of whether Defendants' actions violated 42 U.S.C. § 1981 by intentionally discriminating against Plaintiffs because of their race, by refusing to renew the ASA or make new contracts with the individual physicians. The jury will also be presented with the question of whether Defendants' actions amounted to a violation

24

of its contractual duty of good faith and fair dealing toward Urgent Care.

The Court further SETS this matter for a Final Pretrial Conference at 2:00 P.M. on May 11, 2006. The parties are not required to submit their joint proposed final pretrial order until the close of business on May 10, 2006.


        SO ORDERED.


Dated: May 2, 2006          s/S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge